UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY LUST,

     Plaintiff,

                                    Case No. 17-12170
v.                                   District Judge Victoria A. Roberts
                                      Magistrate Judge Elizabeth A. Stafford

JAMES PLUMMER and
GIDEON PAETZ,

     Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. #23)

### I.    INTRODUCTION

Kimberly Lust ("Lust") filed this civil rights action under 42 U.S.C. § 1983 against Michigan State Police troopers James Plummer ("Plummer") and Gideon Paetz ("Paetz") (collectively, "Defendants"). Lust also brought related false arrest and false imprisonment claims under Michigan law.

Lust says that Defendants violated her Fourth Amendment rights by fabricating evidence to create probable cause to arrest and detain her. She also claims that Defendants committed an unlawful search and seizure of her person and property and maliciously prosecuted her. Further, Lust says that Plummer failed to preserve material, exculpatory evidence and used excessive force to arrest her. Finally, Lust says that Plummer retaliated against her for exercising her First Amendment rights.

Lust stipulated to dismissal of her Fourth Amendment excessive force, First Amendment retaliation, and Fourteenth Amendment due process claims against Paetz.

The remaining claims against Paetz are Lust's Fourth Amendment unlawful search and seizure, Fourth Amendment malicious prosecution, fabrication of evidence, and state law tort claims.

The remaining claims against Plummer are Lust's Fourth Amendment unlawful search and seizure, Fourth Amendment excessive force, Fourth Amendment malicious prosecution, Fourteenth Amendment failure to preserve exculpatory evidence, First Amendment retaliation, fabrication of evidence, and state law tort claims.

Defendants brought this motion for partial summary judgment, asserting that they are entitled to qualified immunity on all but Lust's Fourth Amendment excessive force claim against Plummer.

For the reasons below, that motion is **GRANTED**.

## II.    BACKGROUND

Lust was returning from a friend's house in the early morning of February 13, 2015, when she lost control of her car. She got stuck in a snow bank at the corner of Gallagher St. and the Davison service drive in Detroit. Defendants pulled up behind Lust in their patrol car. Lust says that Defendants informed her that they were going to tow her car. She admits that she strongly objected. The parties dispute what happened next; Lust says that Plummer asked her to take a breathalyzer test and proceeded to beat her with his baton and arrested her, all without probable cause. Defendants say that Lust was irate, tried to remove her car from the snow bank against Plummer's orders, and physically resisted them once she was removed from the car and placed under arrest.

Defendants removed this case to federal court on July 3, 2017. Lust filed an

Amended Complaint on January 9, 2018. Defendants filed their motion for partial

summary judgment on July 6, 2018. Defendants' motion is now before the Court.

## III.   STANDARD OF REVIEW

Summary Judgment is proper if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a).  The movant has the initial burden of demonstrating the basis for its

motion and identifying portions of the record that show an absence of a genuine issue of

fact.  *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845,

848 (6th Cir. 2002).  Once that burden is met, the non-moving party must set forth

specific facts that present a "genuine issue for trial."  *Id.*  The existence of a mere

scintilla of evidence to support a plaintiff's position will not suffice; there must be

evidence on which the jury could reasonably find for the plaintiff.  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Parties must support assertions of fact by "citing

to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those

made for purposes of the motion only), admissions, interrogatory answers, or other

materials."  Fed. R. Civ. P. 56(c)(1).

## IV.   DISCUSSION

### A. Lust waived her Fourth Amendment unlawful search and seizure, Fourth Amendment malicious prosecution, First Amendment retaliation, and state law gross negligence claims

In her complaint, Lust claims that Defendants violated her Fourth Amendment right to be free from unreasonable search and seizure, alleging that Defendants unlawfully searched and seized her person and property. Lust also says that Defendants violated her Fourth Amendment rights by instituting a malicious prosecution. Additionally, Lust alleges that Plummer violated her First Amendment rights by arresting her because she vocally opposed the towing of her vehicle. Finally, Lust asserts that Defendants were grossly negligent in the execution of their duties, in violation of Michigan law.

Lust fails to fully address these claims in her brief in opposition to Defendants' motion for summary judgment. As such, she waived them. *See Crampton v. Kroger Co.*, 213 F.Supp.3d 910, 913 (6th Cir. 2016); *See also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (citing *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)).

Given the above, Lust's First Amendment retaliation claim against Plummer is **DISMISSED**. Lust's Fourth Amendment unlawful search and seizure, Fourth Amendment malicious prosecution, and state law gross negligence claims against both defendants are also **DISMISSED**.

The Court now addresses the only remaining claims against Plummer: Fourth Amendment excessive force, Fourteenth Amendment failure to preserve exculpatory evidence, fabrication of evidence, and state law intentional tort claims; and the only

remaining claims against Paetz: fabrication of evidence and state law intentional tort claims.

**B. Qualified Immunity**

The doctrine of qualified immunity protects governmental officials performing discretionary functions from civil liability unless their conduct violates a clearly established constitutional right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis requires a two-prong inquiry into "whether the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court has the discretion to decide which of the two prongs of the analysis to address first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For the reasons discussed below, Lust fails to prove a violation of a clearly established constitutional right. The Court need not reach the issue of qualified immunity.

**C. Lust's Failure to Preserve Exculpatory Evidence Claim**

Lust says that Plummer violated her Fourteenth Amendment right to procedural and substantive due process by failing to preserve exculpatory evidence. Lust alleges that Plummer failed to preserve the in-car video from the night of her arrest, in contravention of Michigan State Police policy. Lust also says that her testimony regarding Plummer's actions on the night of her arrest establishes that the in-car video was, in fact, exculpatory. Lust fails to raise a question of material fact on this issue.

The Due Process Clause of the Fourteenth Amendment mandates that police officers preserve material exculpatory evidence; a police officer's failure to preserve constitutionally material evidence subjects him to liability regardless of whether the evidence was lost in good or bad faith. *U.S. v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996). The Fourteenth Amendment does not impose such stringent standards on officers with respect to evidence that is only potentially exculpatory, however. "[W]here the government fails to preserve evidence whose exculpatory value is indeterminate and only 'potentially useful' to defendant, we apply a different test." *Id.* (citing *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988)). The claimant must show that: (1) the government acted in bad faith in failing to preserve the evidence; (2) the exculpatory value of the evidence was apparent before its destruction; and (3) the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Id.*

First, it is apparent that the in-car video must be classified as potentially exculpatory. But, Lust fails to establish that the exculpatory value of the video was apparent before its destruction. Her only proof that the video was materially exculpatory is her own testimony regarding Plummer's actions on the night of her arrest. Specifically, Lust says that Plummer assaulted her directly in front of the patrol car, within range of the in-car video camera; she ultimately asserts that the in-car video would corroborate her testimony that Plummer beat her with his baton and arrested her without probable cause. However, Lust never saw the video; her testimony is "mere speculation," insufficient on its own, to prove that the video was exculpatory. *Id.* at 219. Lust simply has no way of knowing whether the video was exculpatory. Further, Lust

has no evidence, aside from her own testimony, that Plummer knew the video was exculpatory. Indeed, Plummer testified that the video did not show the arrest; Paetz testified he never saw the video.

Lust, at most, can only establish that Plummer was negligent for failing to preserve the video; negligence, however, cannot form the basis of a constitutional violation. "[W]here the government is negligent, even grossly negligent, in failing to preserve potential exculpatory evidence, the bad faith requirement is not satisfied." *U.S. v. Wright*, 260 F.3d 568, 570-71 (6th Cir. 2001) (citing *United States v. Jobson,* 102 F.3d 214, 218 (6th Cir. 1996)).

Lust's evidence is simply insufficient to create a genuine issue of material fact. No reasonable juror could find that the in-car video was more than potentially exculpatory; moreover, no reasonable juror could find that Plummer acted in bad faith.

Lust's claim of failure to preserve exculpatory evidence is unsupported and fails as a matter of law.

### D. Lust's Fabrication of Evidence Claims

Lust says that Defendants fabricated evidence to create probable cause to arrest and detain her. Specifically, Lust says that Defendants fabricated evidence by claiming that she assaulted Plummer and resisted and obstructed arrest.

Lust is estopped from litigating probable cause in this civil action; she litigated it in her criminal case. *See Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1997) ("… because plaintiff had a full and fair opportunity to litigate whether probable cause existed to maintain an assault charge against him, he is barred from relitigating that

issue in this § 1983 action."). *See also Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987) ("Where a party has had a 'full and fair opportunity' to litigate an issue in earlier state proceedings, he is precluded from relitigating the same issue in a later federal case.") (*overruled on other grounds by Frantz v. Vill. of Bradford,* 245 F.3d 869, 874 (6th Cir. 2001)).

However, Lust is not estopped from litigating the issue of fabrication of probable cause; indeed, the Sixth Circuit held that, under Michigan law, whether probable cause was fabricated is an inquiry distinct from whether there was probable cause at all. *See Buttino v. City of Hamtramck*, 87 F.App'x 499, 505 (6th Cir. 2004) ("… collateral estoppel does not bar a plaintiff in a subsequent civil action from litigating the issue of whether an officer made a materially false statement to establish probable cause. In those situations, plaintiffs are not relitigating the issue of probable cause, they are challenging the integrity of the evidence used to establish probable cause."). *See also Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) ("we hold that the state court's determination of probable cause at the preliminary hearing is not identical to . . . whether [Defendant] made materially false statements to the state judge that formed the basis of that court's probable cause determination.").

Lust argues that she presented evidence sufficient to create a genuine issue of material fact on her fabrication of evidence claims. She says that her testimony regarding her arrest, combined with the fact that Defendants do not have the in-car video, is sufficient to create a material fact question on fabrication. Lust is simply wrong.

Lust testified that she was returning from a friend's house in the early morning of February 13, 2015, when she lost control of her car. She got stuck in a snow bank at the

corner of Gallagher St. and the Davison service drive in Detroit. She managed to get her car out of the snow bank, only to slide into more snow on the shoulder of the service drive. Lust called her husband to come help; their home was only a few blocks away. Before her husband could arrive, Plummer and Paetz pulled up behind Lust in their patrol car.

Lust says Defendants approached her car; she says Plummer approached her window and asked what the problem was. Lust says she told Plummer that she was stuck and that her husband was coming to pull her out. Lust also says she provided her driver's license and registration, and then got out of the car to show Defendants how she was stuck. Lust says Plummer then informed her that he was going to tow her vehicle; she admits that she strongly objected.

The parties dispute what happened next. Lust says that Plummer got "very upset" and asked her to come to the front of his patrol car. He asked her to take a breathalyzer test. Lust claims that she blew into the breathalyzer twice, and that it failed to register both times. According to Lust, after the second breathalyzer attempt failed, Plummer became irate, said "F*** this black b****," and began to beat her with his baton, telling her that she was going to jail. Lust says she was then arrested and taken to the Detroit Detention Center. Lust also says that Paetz asked Plummer what he was doing and apologized to her for Plummer's conduct.

Defendants say that Lust became irate when Plummer informed her that they were calling a tow truck. They say that Lust then tried to remove her car from the snow bank by hitting the gas pedal, failing to realize that her car was in neutral. Plummer says he feared that Lust would accidentally hurt someone, so he reached into Lust's car to turn

off the ignition. He says that Lust blocked his hand. Plummer says he then told Lust that he would have to forcibly remove her if she did not get out of the car. Lust did not comply; Defendants then pulled her out of the car through the driver's side door and arrested her. Defendants say Lust physically resisted the entire time. Defendants also say that they had to use forcible strikes to the knee and jugular to subdue Lust.

Lust fails to proffer new evidence specific to her fabrication claim. Lust presents the same evidence that she used in her criminal case: her testimony and assertions regarding what happened on the night of her arrest. Lust's testimony was considered when the Michigan Court of Appeals reversed the state trial court's determination that there was no probable cause to believe that she had committed a crime. Her claim that Plummer withheld the in-car video was considered as well. Lust's proffer of the same testimony that was considered by the state appellate court amounts to a veiled attempt to relitigate probable cause. Lust is collaterally estopped from doing so. *See Smith*, supra, at 1077.

Lust's fabrication claim is unsupported and fails as a matter of law.

### E. Lust's State Intentional Tort Claims

Lust also brought false arrest and false imprisonment claims under Michigan law. Lust's claims are unsupported and fail as a matter of law.

Michigan law provides qualified immunity for lower level governmental employees' intentional torts, if three threshold elements are met. *See Odom v. Wayne Cty.*, 482 Mich. 459, 461 (2008). In Michigan, governmental employees enjoy qualified immunity for intentional torts if they raise governmental immunity as an affirmative defense and

establish that (1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial, in nature. *Id.* Addressing the second requirement of the test, bad faith can be shown by proof that the governmental official acted with malice or a "wanton or reckless disregard for the rights of another." *Id.* at 474.

Lust says that there is a question of fact concerning whether Defendants arrested her in bad faith; thus, she asserts that they are not entitled to immunity under state law.

As discussed above, it has been conclusively established that Defendants had probable cause to arrest and detain Lust. Further, Lust's fabrication claims fail as a matter of law. Because Defendants had probable cause, no reasonable juror could find that they acted in bad faith when they arrested Lust.

Lust has failed to raise a genuine issue of material fact on these claims.

## V.     CONCLUSION

Defendants' motion for partial summary judgment is **GRANTED**. Count I of Lust's complaint will proceed to trial on her Fourth Amendment excessive force claim against Plummer. Lust's other claims are **DISMISSED**.

**IT IS ORDERED**.

S/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: October 23, 2018